MORRIS PLAN COMPANY, A CORPORATION, RESPONDENT, v. UNIVERSAL CREDIT COMPANY, A CORPORATION, APPELLANT.—168 S. W. (2d) 136.

Kansas City Court of Appeals. January 11, 1943.

366

*Edward S. North* for respondent.

*Harry B. Jenkins* for appellant.

BOYER, C.—Action for the conversion of an automobile. By the terms of the petition plaintiff's claim is based upon its alleged ownership of a promissory note for the sum of $454, and a chattel mortgage upon the automobile in question to secure the payment of said note, all executed by one Eastwood, owner of the car at the time; that the note and chattel mortgage were executed in favor of Palmer Motor Company of Paola, Kansas, and for the benefit of it and its assigns, and bear the date of February 19, 1938; that plaintiff purchased said note for value before maturity on or about February 20, 1938, and same was endorsed·by Palmer Motor Company to the order of plaintiff; that it was delivered to plaintiff who has ever since been the owner thereof; that by removal of the car from Miami County, Kansas, plaintiff under the terms of the mortgage was entitled to immediate possession; "that the motor car aforesaid came into possession of defendant on or about March 19, 1938, who then and there or thereafter and prior to the date of the filing of this action unlawfully converted the same to its own use." The value of the car was alleged and plaintiff prayed judgment for $499.40, together with interest from the date of conversion.

The answer was a general denial of every allegation in the petition, and a plea that defendant was the owner of the automobile in question as mortgagee on May 24, 1937, and subsequent thereto; that the mortgage was duly filed of record on May 27, 1937, in Miami County, Kansas; that said mortgage was executed by Mary Palmer, a resident of Miami County, Kansas, and that it was filed in conformity with the statutes of Kansas; that at the time the mortgage was executed the automobile was located in Miami County, Kansas; that on March 19, 1938, the mortgage under which defendant claims was in default and defendant was entitled to the immediate exclusive possession of said automobile.

The dominant question in the case was that of priority of lien between the chattel mortgage under which plaintiff claims and a conditional sale contract under which defendant claims as mortgagee.

The case was tried before the court without a jury. The court marked "given" separate findings of fact and conclusions of law requested by the plaintiff. The defendant made no similar request for findings and conclusions to be stated separately in writing. The effect of the findings and conclusions of the court was that defendant had waived any right of lien under its conditional sale contract by its course of dealing with Mary Palmer and the Palmer Motor Company. The judgment recites that the court "finds that the plaintiff is entitled to recover from the defendant the sum of $525." Judgment was entered accordingly for that sum and for costs.

The defendant duly appealed and presents for consideration in formal manner the following:

## "ASSIGNMENT OF ERRORS

"Appellant complains that the court erred in the following respects:

### I

"In admitting incompetent, irrelevant, improper and immaterial evidence offered by the plaintiff over the objection of defendant.

### II

"In refusing to give defendant's instruction in the nature of a demurrer to the evidence at the close of plaintiff's evidence.

"(a) There was no substantial or competent evidence of estoppel in the record tending to prove that defendant had departed, deviated from or abandoned the conditional sale contract, under which it claims.

"(b) There was no substantial or competent evidence of a custom or usage that would vary the terms of its written contract.

### III

"In overruling defendant's motion for new trial and in arrest of judgment.

### IV

"The Court's Finding of Facts and Declaration of Law were all based on improper and incompetent testimony offered by the plaintiff."

Respondent has raised the question as to the sufficiency of the assignment of errors to present any definite subject for review in that it fails to meet the requirements that errors should be specifically pointed out and show where they may be found in the record; and that such assignment does not meet the requirements of this court. It is further claimed that the first assignment is inadequate because not properly raised in the motion for new trial. The motion recites "that the court erred in admitting irrelevant, incompetent and prejudicial evidence offered by the plaintiff over the objections and exceptions of the defendant."

Respondent is in error in claiming that this assignment is not sufficient in the motion for new trial to permit review on appeal if the subject is properly presented. Such a general assignment in a motion for new trial, both upon the admission or rejection of evidence as well as the giving or refusal of instructions, is adequate for that purpose. [Wampler v. Railroad, 269 Mo. 464; Bobos v. Krey Packing Co., 317 Mo. 108, 114, 296 S. W. 157.] However, the required content of an assignment of error on appeal is a different matter. Rule 17 of this court provides that "the brief on behalf of appellant or plaintiff in error, shall distinctly and separately allege the errors committed by the inferior court . . ." Looking alone to the assignment of errors, it is evident that there is a failure to comply with this rule. The first assignment, for instance, does not identify any

evidence which is claimed to have been erroneously admitted, nor does it state any reason why the court erred in admitting it. "Assignments of error are required to specify the particulars in which the action of the court is erroneous in order to present a complaint for review." [The University Bank v. Major, 229 Mo. App. 963, 969.]

The brief, under points and authorities and in the printed argument, complains that Mary Palmer was permitted to testify for plaintiff directly in conflict with the written provisions of her written instrument; that the court reached erroneous conclusions and findings based upon this improper testimony; and it was error to admit the testimony of Mary Palmer tending to vary the terms of the written instrument as to a custom and usage in conflict with the written instrument, all of all of which is treated under point I and in reference to assignment I. There are three other points in the brief on specified subjects, none of which are mentioned or included in any manner in the assignment of errors set forth.

It is the desire here to call attention once more to the distinction between an adequate assignment of error in a motion for new trial, and an adequate assignment of error such as is required to be presented in appellate practice as shown in the foregoing; and also to indicate the effect of a formal assignment of error when one is made, or attempted to be made, in the presentation on appeal. It is a recognized practice that no separate formal assignment of errors is required, provided the brief under points and authorities is adequate in form to constitute assignments of error. But when appellant presents a formal assignment of error, as in this case, the sufficiency of such assignment is determined by its contents alone, and questions raised in the brief other than those contained in the assignment are deemed to have been waived and the appellate court is not required to consider them. Such was the ruling of the Supreme Court in the case of Bachman v. Railroad Co., 310 Mo. 48, 65, 274 S. W. 764, and it was followed by this court in Kelly v. A. Lincoln Life Ins. Co., 225 Mo. App. 317, 321, 33 S. W. (2d) 992.

From a strict point of view the assignment of errors in this case is inadequate to present any particular question for review in that it fails to show specifically wherein any error is claimed to have been committed or any reason why any ruling of the court was erroneous. A dismissal of the appeal would be justified under Rule 18 of this court. Notwithstanding this situation, it is deemed competent for the court to give further notice to the assignments made provided it be done without adverse effect to the rights of respondent (Bello v. Stuever, 44 S. W. (2d) 619, 620); but what is said is not to be regarded as a waiver of the requirements of the rules of court and recognized procedure on appeal. Points I and IV of the assignment of errors are related. What is claimed to be improper evidence admitted by the court is the testimony of Mary Palmer which is said to vary the terms of her written instrument which was the

conditional sales contract referred to herein. Upon an examination of the record it is disclosed that the testimony of this witness was not offered for the purpose of contradicting or varying the terms of any written instrument, but in reference to the arrangement between her and the defendant by which she was permitted to sell the car in question in the usual course of business, as well as other cars financed by the defendant, and after said sale to pay the indebtedness to the defendant. Her testimony was to the effect that such had been the procedure in reference to all of the cars financed by defendant, including demonstrator cars and the particular automobile in question in this case, and that many sales of a similar character had been made through the years with the knowledge and consent of the defendant.

Defendant offered evidence on the same subject, and to the contrary of that offered by the plaintiff, through the testimony of its former credit manager who at the time of trial said he was in charge of the "receivable suspense department." He distinguished between the plans of financing cars to be kept on the sales room floor of the agent and what is called a demonstrator, and testified in effect that in the case of all cars financed on the floor-plan the dealer had the right to sell the car and was supposed to remit to the defendant as soon as it was sold; but that in reference to the sale or disposition of a car that was used as a demonstrator, such as the one in question in this case, there was no power, authority or right to sell such car.

There was no prejudicial error in admitting evidence upon the question as to whether or not the Palmer Motor Company was permitted by defendant to sell automobiles in the usual course of business that were covered by the so-called conditional sale contract and to account for the amount due defendant after said sale was made. This became not only a relevant but a vital question in the case. Defendant recognized it as such and joined issue by offering evidence on the subject. It appears that defendant is not in a position to justify its objection to the relevancy of such evidence. [Siberell v. St. Louis-San Francisco Railway Co., 9 S. W. (2d) 912, 915; Snyder v. American Car & Foundry Co., 322 Mo. 147, 14 S. W. (2d) 603, 606.]

Under the evidence the court found:

"That at the times in question in this case it was, and for several years prior thereto had been understood and agreed between defendant and said Palmer Motor Company, and it had been and was then the practice, that cars bought by said Motor Company as demonstrators could and would be sold by said Motor Company in the ordinary course of business as part of the stock in trade of said Motor Company, and that upon the sale thereof Palmer Motor Company would remit to defendant the amount then unpaid on the conditional sales agreement covering said car."

Such finding was authorized to be made by the court upon conflicting evidence.

There was evidence that from 1931 to 1938, Mary Palmer as sole owner conducted a motor car sales agency in Paola, Kansas, under the name of Palmer Motor Company. She handled Ford cars and from the beginning arranged with defendant to finance the purchase of new cars. One class of new cars so financed was known as demonestrator cars; that is, cars used for exhibition away from the showroom to prospective purchasers. When a car was originally acquired for use as a demonstrator the title was taken in the name of an individual because demonstrators had to have license tags in the salesman's name. The conditional sale agreement would be executed purporting to show a sale from Palmer Motor Company to the individual in question, and that conditional sale agreement would then be assigned to defendant as security for the money it had advanced to finance the purchase of the car from the Ford Motor Company. When the arrangement for financing demonstrator cars was made by Mary Palmer with defendant's representative, it was agreed that the demonstrator cars could be sold in the ordinary course of business and the indebtedness thereon thereafter paid to defendant. That practice was followed through the years. Periodically defendant, through a representative, would check the Palmer Motor Company's stock both of showroom and demonstrator cars to ascertain whether any had been sold for which remittances had not been made. Occasionally such a situation was disclosed and defendant would demand and receive its money. The defendant never questioned the right of the Palmer Motor Company to sell a demonstrator car in the ordinary course of business without first satisfying defendant's claim. Numerous other demonstrator cars had been purchased by the Palmer Motor Company, financed by defendant, and sold in the ordinary course of business without first paying defendant, and without criticism from defendant. The car in question in this case was purchased and financed as a demonstrator car. It was financed by defendant in the name of Mary Palmer, owner of the Palmer Motor Company, who executed the conditional sales contract under which defendant claims as mortgagee. The car was kept at the store and demonstrations were given with it; it was regularly checked by defendant as a demonstrator car. In the ordinary course of business the car was sold to Albert Eastwood. As part payment of the purchase price, Eastwood executed a note for $454, and to secure its payment executed a chattel mortgage on the car. Subsequently the note was sold and assigned to the plaintiff. On March 18, 1938 defendant, claiming under its conditional sale contract, took possession of the Eastwood car and sold it. The findings of the court were in accord with this evidence.

The judgment of the court was authorized. When a mortgagee or conditional sale vendor of an article permits the mortgagor or vendee to remain in possession of the article knowing that it is to be offered for sale in the ordinary course of business, the mortgagee or vendor is estopped to deny the right of the mortgagor or vendee to

sell the article and pass title to the purchaser. The rule is stated another way in the case of Moffett Bros. v. Kent (Mo. Sup.), 9 S. W. (2d) 395, 400:

"By consenting to a sale and the collection of the proceeds by the mortgagor, the mortgagee surrenders his lien and looks to the *mortgagor personally* for the payment of the mortgage debt. It is so held quite universally. [Stockyards National Bank v. Wool Co. (Mo. Sup.), 289 S. W. 623, and authorities cited.] It is not necessary that such consent in order to constitute a waiver be expressed; it may be implied. Nor is it necessary that the vendee of the mortgagor have knowledge of such consent, or even of the existence of the mortgage."

The decision of the Supreme Court of Kansas in the case of Trapani v. Universal Credit Co., 151 Kan. 715, is particularly persuasive in that the transactions in the present case all occurred in Kansas. One of the features of the Trapani case was treated and decided in this manner:

"Defendant next argues that under the facts in this case under the conditional sales contract the Palmer Motor Company never had any title to the Lincoln-Zephyr automobile and therefore could not pass any title to plaintiff. In connection with this argument it should be noted that the findings of the court show that the Universal Credit Company knew that the Palmer Company was buying the car for the purpose of resale. Its agents knew it was being demonstrated and knew that the Palmer Company bought it for no other purpose than to sell it. Under such circumstances it would not do to hold that the Palmer Company did not have sufficient title in this car to pass title to a purchaser in good faith. To do so would open the door to fraud."

The point sought to be made in reference to the ruling upon the demurrer is disposed of by the conclusion heretofore reached that the evidence was sufficient to support the judgment. Furthermore, defendant's request for a peremptory instruction was made at the close of plaintiff's evidence. Defendant did not stand upon its requested demurrer but continued further examination of plaintiff's last witness and thereafter offered its own evidence, and at the close of all the evidence there was no presentation of a demurrer. The point was waived.

The judgment of the trial court was justified and it should be affirmed. The Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.